**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **PABLO ANDRES MUNOZ ARMELLA,**<br><br>**Plaintiff**<br><br>**v.**<br><br>**MBO STUDIO INC. d/b/a MBO RECORDING STUDIOS, and BENJAMIN WOLLNER,**<br><br>**Defendants.** | **Case No.:**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Pablo Andrés Muñoz Armella ("Plaintiff"), by and through his undersigned counsel, upon personal knowledge as to himself and his own acts and experiences, and upon information and belief as to all other matters, alleges as follows:

## NATURE OF ACTION

1. This is an action to recover earned but unpaid regular wages, minimum wages, overtime compensation, spread-of-hours pay, damages for unlawful delays in wage payment, statutory damages, liquidated damages, prejudgment interest, and attorneys' fees under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., the New York Labor Law ("NYLL"), Articles 6 and 19, and the Wage Theft Prevention Act ("WTPA"), NYLL §§ 195(1) and 195(3).

2. MBO Studio Inc. ("MBO") first obtained Plaintiff's productive labor under the label of an unpaid intern and later placed him on W-2 payroll as an Assistant Engineer at its Manhattan recording studio for $17.00 per hour. As Plaintiff's responsibilities expanded, MBO, through its President and controlling manager Benjamin Wollner ("Wollner"), also assigned Plaintiff Recording Engineer sessions at an agreed rate of $21.00 per hour.

3. Plaintiff was a non-exempt hourly employee. During paid employment, his regular schedule was generally thirty-two hours per week, but Defendants also required mandatory weekly meetings,

post-shift work, Recording Engineer sessions, and additional twelve-hour shifts. During the workweek beginning February 23, 2026, and again during at least one later workweek, Plaintiff worked at least forty-four scheduled hours before adding meeting and end-of-shift work. Defendants paid no overtime premium.

4. Defendants tracked Plaintiff's presence and work through Slack arrival and departure messages, studio schedules and booking records, session communications, and management emails. Yet MBO's payroll records omitted or obscured mandatory meetings, late departures, overtime hours, spread-of-hours premiums, and Plaintiff's $21.00 Recording Engineer work.

5. Defendants also used an unlawful monthly payroll practice. They represented that Plaintiff would be paid on the first Monday of each month, but payments were frequently late, with later payments issued weeks after the represented payday and final wages withheld entirely. New York law required payment at least semi-monthly even if Plaintiff is classified as a clerical or other worker, and weekly if his primarily physical studio duties made him a manual worker.

6. After Plaintiff worked through a four-week resignation period requested and acknowledged by Wollner, Defendants failed to pay his March and April 2026 Assistant Engineer wages or the January and February 2026 Recording Engineer compensation he had demanded. The written final wage itemization totals at least $4,412.00 before taxes, exclusive of unpaid internship wages, mandatory meetings, late-departure time, additional engineering compensation, overtime premiums, spread-of-hours pay, interest, liquidated damages, and statutory damages.

7. Plaintiff repeatedly complained about the payment failures, itemized the exact final wages due, called Wollner, left a voicemail, and sent follow-up emails on May 1, 5, 11, 15, and 20, 2026. Defendants neither disputed the work nor paid the wages. Their continued withholding of wages after receiving detailed written notice was knowing, willful, and not the product of a reasonable good-faith interpretation of the law.

8. Plaintiff seeks all unpaid wages and premiums, an equal amount of liquidated damages to the fullest non-duplicative extent permitted by law, statutory damages for deficient wage notices and wage statements, damages for untimely wage payment, prejudgment and post-judgment interest, reasonable attorneys' fees and costs, and all other relief the Court deems just and proper.

**JURISDICTION AND VENUE**

9. This Court has original subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the FLSA, including 29 U.S.C. §§ 206, 207, and 216(b).

10. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's NYLL and common-law claims because those claims arise from the same employment relationship, compensation practices, hours, records, and unpaid wages as the FLSA claims and therefore form part of the same case or controversy.

11. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this District for venue purposes and because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Manhattan, New York County, within this District.

12. Plaintiff performed the work at issue principally at MBO's recording-studio facility located at 723 Seventh Avenue, Sixth Floor, New York, New York 10019, where Defendants scheduled, directed, accepted, and failed to pay for Plaintiff's labor.

13. At all relevant times, MBO was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(r) and 203(s). MBO operated a commercial recording-studio business, used instrumentalities of interstate commerce, used equipment and materials that had moved in interstate commerce, served artists and clients, transmitted and received digital audio and business communications, and, upon information and belief, had annual gross revenues of at least $500,000.

14. Separately and in the alternative, Plaintiff was individually engaged in commerce because his

assigned studio work involved interstate communications, digital files, clients, artists, equipment, supplies, and instrumentalities of commerce.

## THE PARTIES

***Plaintiff***

15. Plaintiff Pablo Andrés Muñoz Armella is an adult resident of New York County, New York.

16. MBO obtained Plaintiff's labor under the label of an unpaid intern from July 17, 2024 through approximately July 2, 2025, and employed him as a paid W-2 Assistant Engineer and Recording Engineer from July 3, 2025 through April 18, 2026.

17. At all relevant times, Plaintiff was an "employee" within the meaning of 29 U.S.C. § 203(e) and NYLL §§ 190(2) and 651(5). He was hourly, non-exempt, and entitled to minimum wages, overtime compensation, and the protections of Articles 6 and 19 of the NYLL.

18. Plaintiff was a manual worker within the meaning of NYLL § 190(4) because at least approximately half of his workday involved physical labor, including starting up rooms and equipment; cleaning studio spaces and surfaces; setting up, moving, maintaining, and breaking down recording gear; running errands for food, office supplies, and equipment; performing hardware maintenance; unpacking and organizing furniture and supplies; preparing rooms; and physically assisting sessions. At minimum, Plaintiff was a "clerical and other worker" within NYLL § 190(7).

***Corporate Defendant MBO Studio Inc.***

19. Defendant MBO Studio Inc. is a New York corporation that conducted business under the name MBO Recording Studios. MBO's employment documents identify a corporate address at 3000 Marcus Avenue, Suite 1W5, Lake Success, New York 11042, and its payroll records identify its operating workplace at 723 Seventh Avenue, Sixth Floor, New York, New York 10019.

20. MBO operated a commercial recording studio in Manhattan, obtained and employed Plaintiff's labor, set his pay rates and schedule, assigned and accepted his work, maintained or failed

to maintain his time and payroll records, issued his W-2 payroll through QuickBooks, and withheld the wages at issue.

21. At all relevant times, MBO was an "employer" within the meaning of 29 U.S.C. § 203(d) and NYLL §§ 190(3) and 651(6).

***Individual Defendant Benjamin Wollner***

22. Defendant Benjamin Wollner is an adult individual who, at all relevant times, served as MBO's President, Plaintiff's direct supervisor, MBO's operations manager, and, upon information and belief, an owner or principal of MBO.

23. Wollner personally recruited and hired Plaintiff; signed the written offer letter; required Plaintiff to report directly to him; controlled Plaintiff's assignments and schedule; agreed to Plaintiff's $17.00 and $21.00 rates; approved Recording Engineer sessions; decided whether and when wages would be paid; communicated about hours and payroll; received Plaintiff's wage complaints and resignation notice; and had authority to correct the violations.

24. Wollner exercised operational control over significant aspects of MBO's business and Plaintiff's employment, including hiring, supervision, compensation, payroll decisions, work assignments, and employment records. He acted directly and indirectly in MBO's interest in relation to Plaintiff and was an "employer" under the FLSA and NYLL.

25. MBO and Wollner are jointly and severally liable to the extent permitted by the FLSA and NYLL. The precise allocation of payroll and corporate responsibilities is within Defendants' exclusive possession and control.

## FACTUAL ALLEGATIONS

***MBO Obtains Productive Studio Work Under an Unpaid-Intern Label***

26. Plaintiff began working at MBO on July 17, 2024 under the label of an unpaid intern. His initial schedule was Wednesday and Thursday from approximately 12:00 p.m. to 12:00 a.m., totaling

approximately twenty-four hours per week. His initial assignments included answering the telephone and completing errands or "runs" for the studio.

27. Plaintiff was supervised by the Assistant Engineer on duty and received only minimal training commensurate with the limited tasks initially assigned.

28. Beginning on or about August 5, 2024, MBO materially expanded Plaintiff's responsibilities while continuing to call him an unpaid intern. Plaintiff worked Monday and Tuesday nights from approximately 10:00 p.m. to 5:00 a.m.; led the shift in the absence of higher management; acted as the point of contact between the studio and clients during sessions; coordinated other interns; troubleshot session issues; and shut down the rooms at the end of the shift.

29. Beginning on or about October 2, 2024, Plaintiff's schedule changed to Wednesday and Thursday from approximately 10:00 a.m. to 10:00 p.m., totaling approximately twenty-four scheduled hours per week. MBO assigned him software and hardware maintenance, coordination of technical-support visits, studio-floor operations, and occasional Recording Engineer work.

30. Beginning on or about January 9, 2025, while MBO continued to label him an unpaid intern, Plaintiff worked Thursday and Friday from approximately 10:00 a.m. to 10:00 p.m. and Saturday from approximately 2:00 p.m. to 10:00 p.m., totaling approximately thirty-two scheduled hours per week.

31. By that time, Plaintiff was performing substantially the same productive and operational duties as paid Assistant Engineers, including acting as the studio-floor point of contact, opening and closing rooms, maintaining equipment and software, assisting sessions, addressing client needs, and performing occasional engineering work.

32. In or around late April 2025, MBO agreed to pay Plaintiff a flat amount of $1,650 per month because he was functioning as an Assistant Engineer and occasionally engineering sessions. MBO made two such payments, one in or around April 2025 and one in or around May 2025 but did not provide wage statements identifying the dates covered, hours, rates, or calculation.

33. The two flat-fee payments did not retroactively compensate the many preceding months of unpaid work. To the extent either payment was intended to cover a full month of Plaintiff's thirty-two-hour weekly schedule, the payment also failed to compensate all hours at the applicable New York minimum wage and did not include spread-of-hours pay.

34. MBO, not Plaintiff, was the primary beneficiary of the relationship. Plaintiff performed productive work integral to MBO's commercial recording-studio operations over an extended period; his responsibilities increased to those of an acting Assistant Engineer; his work did not merely complement academic instruction; and MBO obtained immediate operational benefit from his labor.

***MBO Converts Plaintiff to a Paid W-2 Assistant Engineer***

35. On June 10, 2025, Wollner emailed Plaintiff to offer him an Assistant position "starting June 1st 2025" at an hourly wage of $17.00. Plaintiff accepted the offer and supplied the identifying and banking information MBO requested for W-2 payroll and direct deposit.

36. MBO's written offer letter, dated June 1, 2025 and signed by Plaintiff on June 2, 2025, offered the position of Assistant Engineer, identified Wollner as President and Plaintiff's direct supervisor, described the position as part-time and initially scheduled Wednesday through Saturday, and promised $17.00 per hour under MBO's payroll practices.

37. Plaintiff completed and returned MBO's onboarding documents, including direct-deposit and tax forms, by late June 2025 and supplied the requested bank document on July 2, 2025. MBO treated Plaintiff as a W-2 employee and paid him through QuickBooks by direct deposit.

38. Although the offer letter identified June 1, 2025 as the start date and MBO completed Plaintiff's formal onboarding on or about July 1, 2025, Plaintiff's first official W-2 workday was July 3, 2025. Plaintiff continued performing Assistant Engineer duties between June 1 and July 2, 2025 without hourly compensation.

39. As an Assistant Engineer, Plaintiff performed the operational work needed to keep MBO's studio floor and sessions functioning. His duties included coordinating day and night operations;

opening and closing the facility; preparing, setting up, moving, testing, and breaking down session equipment; organizing audio tracks; testing gain and monitoring levels; handling hospitality; cleaning; running errands; troubleshooting; and responding to artists, clients, engineers, and session needs.

40. Plaintiff also performed software and hardware maintenance and used professional studio systems and equipment including outboard gear, DADMan, Dante systems, the SSL Origin mixing console, SSL UF8 controllers, and an AVID S4. At MBO's direction, he attended weekly staff meetings and participated in interviews of prospective interns, but he lacked authority to hire, fire, set policy, determine compensation, or make final personnel decisions.

41. Plaintiff did not manage a recognized department, supervise two or more employees within the meaning of an exemption, hire or fire personnel, set company policy, exercise independent discretion on matters of significance, or perform work requiring an advanced professional degree. No executive, administrative, professional, or other exemption applied.

42. MBO and Wollner controlled Plaintiff's schedule, assigned his shifts and sessions, required his attendance, communicated with him through Slack and email, and received the direct benefit of his work.

***Defendants Agree to Two Rates but Use a Monthly and Chronically Late Payroll***

43. MBO agreed to pay Plaintiff $17.00 per hour for Assistant Engineer work.

44. By no later than November 2025, after Plaintiff's responsibilities expanded and MBO assigned him sessions as the lead Recording Engineer, Plaintiff and Wollner agreed that Plaintiff would receive $21.00 per hour for Recording Engineer work.

45. Wollner personally approved the engineering assignments and received Plaintiff's written session-by-session hour reports. Plaintiff's emails identify the dates, clients or session names, and total Recording Engineer hours.

46. Defendants told Plaintiff that wages would be processed monthly, on the first Monday of each month. That arrangement was unlawful because NYLL § 191 required payment no less frequently than semi-monthly even for a clerical or other worker and weekly for a manual worker absent a statutory authorization.

47. MBO's paystubs confirm the monthly practice and repeated delay. MBO paid the July 2-August 1, 2025 period on August 6; the August 2-September 1 period on September 12; the September 2-October 1 period on October 7; and the October 2-November 1 period on November 10.

48. On December 11, 2025, MBO paid 128 Assistant Engineer hours for the November 2-December 1 period at $17.00 per hour. It issued a separate $100.00 payment that same day labeled only as a "Bonus," with zero hours and no hourly rate. Plaintiff understood that payment to concern his previously reported October Recording Engineer work, but the statement did not identify it as wages or specify the hours and rate being paid.

49. MBO paid 116 Assistant Engineer hours for the December 2, 2025-January 1, 2026 period on January 22, 2026, and 100 Assistant Engineer hours for the January 2-February 1, 2026 period on March 5, 2026. On March 6, 2026, MBO issued a separate $816.00 payment labeled only as a "Bonus," again with zero hours and no rate or explanation.

50. MBO later paid 140 Assistant Engineer hours for the February 2-March 1, 2026 pay period on March 31, 2026 - approximately one month after the period ended and well after the represented first-Monday payday.

51. The monthly and delayed payroll practice continued throughout Plaintiff's employment. Plaintiff understood that other Assistant Engineers were also paid late. Defendants never informed Plaintiff that MBO had obtained any authorization from the New York Commissioner of Labor to pay manual workers less frequently than weekly.

52. Each delay deprived Plaintiff of the timely use of earned wages, forced him to carry MBO's payroll obligations, impaired his ability to meet ordinary expenses, and contributed to his decision to resign.

***Defendants Require Unpaid Meetings and End-of-Shift Work***

53. During paid employment, Plaintiff's regular schedule was generally Thursday from 10:00 a.m. to 10:00 p.m., Friday from 10:00 a.m. to 10:00 p.m., and Saturday from 2:00 p.m. to 10:00 p.m., totaling thirty-two scheduled hours per week before additional work.

54. MBO required Plaintiff to attend a weekly Tuesday meeting at approximately 8:00 p.m. The meetings generally lasted between one and two hours, averaging approximately one and one-half hours.

55. Plaintiff attended approximately thirty-two such meetings during paid employment. The meetings were work required for MBO's benefit and were compensable at no less than Plaintiff's $17.00 Assistant Engineer rate.

56. Based on Plaintiff's present recollection, the meeting time omitted from the hourly entries totals approximately forty-eight hours, subject to reconstruction from Defendants' calendars, Slack records, emails, and participant records. MBO did not identify any such meeting hours on a wage statement.

57. Plaintiff also regularly remained at the studio after his scheduled departure time because a replacement Assistant was late or because Plaintiff had to complete closing, session, or transition duties. On average, Plaintiff remained approximately thirty to thirty-five minutes past his scheduled departure, and on some nights he remained until approximately 11:00 p.m.

58. MBO used Slack messages as the practical timekeeping method. Plaintiff sent a Slack message when he arrived and another when he left, so Defendants possessed contemporaneous records of his actual start and end times. Plaintiff no longer has access to MBO's Slack workspace.

59. Defendants knew or had reason to know about the additional work because supervisors participated in the meetings, scheduled the shifts, knew replacements arrived late, received the Slack messages, and accepted the benefit of Plaintiff's continued presence and closing work.

60. The omitted time can be determined from Defendants' Slack workspace, meeting invitations, studio booking system, employee schedules, access records, client and session records, and communications with replacement assistants and managers.

***Defendants Assign Recording Engineer Sessions but Fail to Pay the Agreed Rate***

61. On November 13, 2025, following a conversation with Wollner, Plaintiff reported 4.47 Recording Engineer hours for sessions on October 13 and 14, 2025. In a December 1 reminder, Plaintiff referred to approximately five October engineering hours. MBO later issued the unexplained $100.00 "Bonus" payment; it is unclear what this payment was intended to compensate.

62. On November 29, 2025, Plaintiff engineered a session from approximately 6:00 p.m. to 12:00 a.m. His regular Saturday Assistant Engineer shift ran from 2:00 p.m. to 10:00 p.m. When Wollner asked whether the session occurred during Plaintiff's shift, Plaintiff confirmed that it did, and Wollner responded that two hours would be paid. MBO made no separately identified payment for the session. At minimum, the two post-shift engineering hours and any agreed rate differential remain subject to payment.

63. On January 20, 2026, Plaintiff performed six hours as Recording Engineer for a session identified as "Alex" outside his regular Assistant Engineer schedule. Plaintiff reported those hours to Wollner in writing. Under Plaintiff's understanding of the $21.00 agreement, MBO owes $126.00 for that session.

64. On February 20 and 21, 2026, Plaintiff engineered sessions identified as "Babylocc" and "Syxy" for approximately five and four hours, respectively. Both sessions began during Plaintiff's regular shift; the February 20 session continued until approximately 11:00 p.m., and the February 21

session continued until approximately 11:30 p.m. Plaintiff reported nine engineering hours to Wollner in writing and, under his understanding of the agreement, demanded $189.00.

65. Defendants did not substantively dispute Plaintiff's January and February engineering reports or his $315.00 written demand, but they did not pay or properly account for that compensation.

66. MBO's wage statements did not identify the $21.00 rate, did not list Recording Engineer hours, and did not explain whether any payment was intended to compensate such work.

***Plaintiff Works Overtime and Long-Spread Days Without Required Premiums***

67. From the workweek beginning February 23, 2026 through March 21, 2026, MBO added a Wednesday 10:00 a.m. to 10:00 p.m. shift to Plaintiff's regular Thursday-through-Saturday schedule. In a full four-shift week, that schedule created forty-four scheduled hours before meetings and post-shift work.

68. During the workweek of February 23 through March 1, 2026, Plaintiff worked Wednesday from 10:00 a.m. to 10:00 p.m., Thursday from 10:00 a.m. to 10:00 p.m., Friday from 10:00 a.m. to 10:00 p.m., and Saturday from 2:00 p.m. to 10:00 p.m. - at least forty-four scheduled hours. He also attended the Tuesday evening meeting and performed post-shift work.

69. The four-shift schedule remained in effect for three additional weeks through March 21, 2026. Plaintiff had approved leave on Saturdays March 7 and March 14, but worked the full four-shift schedule during at least the week beginning March 16, 2026.

70. MBO paid no time-and-one-half premium for hours above forty in the February 23 workweek, the March 16 workweek, or any other overtime workweek.

71. The January 20 engineering session brought Plaintiff's regular scheduled and engineering hours to approximately thirty-eight before adding the mandatory meeting and post-shift work. Defendants' records will establish whether the total compensable hours in that workweek exceeded forty.

72. The February 20 and 21 engineering sessions overlapped portions of Plaintiff's regular shifts but continued after the scheduled departure times. Those post-shift hours, the mandatory meeting, and other end-of-shift work must be included when determining the total hours in that workweek.

73. Plaintiff's 10:00 a.m. to 10:00 p.m. shifts had a spread of at least twelve hours, and the spread frequently exceeded twelve hours when he remained late. Any paid meal period did not shorten the interval between the beginning and end of the workday.

74. New York City's minimum wage was $16.00 per hour in 2024, $16.50 per hour in 2025, and $17.00 per hour in 2026. During unpaid work, Plaintiff received no compensation toward the minimum wage or spread-of-hours requirement. During paid employment, his $17.00 rate generated only $6.00 above the twelve-hour statutory minimum on a twelve-hour shift in 2025 - less than the additional $16.50 spread-of-hours amount - and generated no excess above the minimum wage in 2026.

75. Defendants paid no separately identified spread-of-hours premium for the twelve-hour shifts or any other day on which the interval from Plaintiff's first work to final departure exceeded ten hours.

76. MBO's March 31, 2026 paystub covered February 2 through March 1 and listed 140 hours solely as "Regular Pay" at $17.00 per hour. It listed no overtime hours, overtime rate, spread-of-hours pay, meeting time, late-departure time, or $21.00 engineering work, even though the covered period included the representative overtime week.

***MBO's Wage Documents Obscure the Underpayments***

77. The wage statements MBO furnished characterized compensation as aggregate monthly "Regular Pay" at $17.00 or as unexplained "Bonus" payments. They did not organize hours by workweek or separately identify regular hours, overtime hours, overtime rates, spread-of-hours pay, or the $21.00 Recording Engineer rate.

78. The statements omitted mandatory meetings, late-departure time, the proper treatment of engineering work, spread-of-hours pay, and other information necessary to explain how wages were calculated.

79. At hiring, MBO did not provide Plaintiff a wage notice conforming to NYLL § 195(1). Plaintiff's primary language is Spanish, and MBO did not provide him a New York State Department of Labor wage-notice form in Spanish or English. The offer letter did not state the overtime rate, a lawful regular payday, claimed allowances, complete doing-business-as information, all required employer contact information, or the statutory acknowledgement concerning Plaintiff's primary language.

80. When Defendants added or implemented the $21.00 Recording Engineer rate, they did not provide a compliant written change notice or a wage statement accurately reflecting that rate and the engineering hours.

81. The inaccurate and incomplete documents caused concrete harm. They represented that paid work was regular Assistant Engineer work at $17.00 or unexplained bonus compensation, concealed the existence and extent of weekly overtime and uncompensated work, prevented Plaintiff from comparing weekly work records to lawful pay, and made it materially more difficult to identify and challenge each violation as it occurred.

82. Plaintiff relied on MBO's payroll records and monthly payment representations while continuing to work and while attempting to resolve the discrepancies directly with Wollner. The missing information delayed his ability to quantify the violations, demand prompt correction, and protect himself from additional unpaid work and loss of the timely use of wages.

83. Had Defendants provided a lawful wage notice and accurate workweek-level wage information, Plaintiff would have recognized the overtime, wage-frequency, spread-of-hours, internship, and $21.00-rate violations sooner; demanded workweek-specific correction; preserved

and compared records contemporaneously; and avoided or mitigated additional unpaid work and delayed wages.

84. The downstream injuries were not abstract informational harms. Plaintiff actually lost wages, lost the timely use of money, continued providing labor under misleading pay records, incurred the burden of repeated collection efforts, and resigned after the payment failures became unsustainable.

***Plaintiff Complains, Gives Notice, Works Through His Final Day, and Is Not Paid***

85. By November 2025, Plaintiff had raised recurring communication and payment problems directly with Wollner. Defendants were already paying wages late and had unresolved engineering compensation.

86. On March 7, 2026, after speaking with Wollner, Plaintiff wrote that the lack of communication, support, and payment had been "draining" him for months and was "not sustainable" long term.

87. At Wollner's request, Plaintiff submitted a written four-week resignation notice on March 23, 2026. The notice identified April 18, 2026 as Plaintiff's final day and expressly cited delayed compensation, scheduling, and communication failures.

88. The notice itemized then-outstanding amounts, including $126.00 for January Recording Engineer work, $2,380.00 for February Assistant Engineer work, and $189.00 for February Recording Engineer work. It also projected $2,465.00 for 145 March Assistant Engineer hours and $1,632.00 for 96 April Assistant Engineer hours through the end of the notice period.

89. MBO paid the $2,380.00 in February Assistant Engineer wages on March 31, 2026, but did not pay or properly account for the January or February Recording Engineer compensation and did not correct the overtime, meeting, late-departure, spread-of-hours, or wage-statement violations.

90. Plaintiff continued to perform his assigned work professionally through April 18, 2026, and MBO accepted the benefit of that labor.

91. Plaintiff performed 145 Assistant Engineer hours in March 2026, for which MBO owes $2,465.00 at the agreed $17.00 rate, before accounting for overtime and other premiums.

92. Plaintiff performed 96 Assistant Engineer hours in April 2026 through his final day, for which MBO owes $1,632.00 at the agreed $17.00 rate, before accounting for any additional premiums.

93. Together with the $315.00 in January and February Recording Engineer compensation Plaintiff demanded under his understanding of the parties' agreement, the presently itemized final-wage balance is at least $4,412.00 before taxes. The amount does not include unpaid internship wages, November engineering compensation, meetings, late-departure work, overtime premiums, spread-of-hours pay, interest, liquidated damages, or statutory damages.

94. Under NYLL § 191(3), all final wages were due no later than the regular payday for the pay period in which Plaintiff's employment ended. Under MBO's own stated monthly schedule, the latest asserted payday was Monday, May 4, 2026, although New York law required a more frequent payroll throughout the employment.

95. On May 1, 2026, Plaintiff emailed Wollner and itemized the $4,412.00 final-wage balance. When no payment arrived, Plaintiff followed up on May 5, May 11, May 15, and May 20. He also called and left a voicemail.

96. Defendants did not respond with any substantive dispute, did not request additional documentation, did not issue a corrected wage statement, and did not pay the balance.

97. Defendants therefore retained the benefit of Plaintiff's labor while knowingly withholding the agreed wages after the employment relationship ended and after receiving repeated written demands.

***Defendants' Violations Were Willful and Their Records Were Inadequate***

98. Defendants knew Plaintiff's actual work because they set his schedule, required his weekly meetings, assigned and approved engineering sessions, received his Slack arrival and departure messages, operated the booking system, and supervised the studio floor.

99. Defendants also controlled the payroll and possessed the information necessary to pay correctly. MBO issued W-2 wages through QuickBooks, generated paystubs, chose a monthly payment cycle, and determined when direct deposits would be released.

100. Plaintiff gave Defendants precise written notice of the payment problems and the amounts due before and after his resignation. Wollner received the complaints personally and had authority to investigate and correct them.

101. The violations were not isolated arithmetic mistakes. Defendants used the same monthly and delayed payroll practice across many pay periods, omitted the same categories of time and rates, paid no identified overtime or spread-of-hours premiums, and continued withholding final wages after multiple demands.

102. Defendants did not undertake a reasonable investigation, reconstruct Plaintiff's hours, issue corrected records, or tender undisputed final wages. Their conduct was knowing or reflected reckless disregard for whether the FLSA and NYLL required prompt payment for all hours worked.

103. Defendants' FLSA violations were willful within the meaning of 29 U.S.C. § 255(a), and Defendants cannot establish subjective and objectively reasonable good faith sufficient to avoid liquidated damages under federal or New York law.

104. Defendants were required to preserve contemporaneous, accurate workweek-level records of Plaintiff's hours, rates, regular and overtime work, and wages. Their monthly aggregate statements and omission or mislabeling of known work violated those obligations.

105. Because Defendants failed to keep and furnish accurate records, they may not benefit from the resulting uncertainty. Plaintiff may prove the amount and extent of uncompensated work through his reasonable recollection and representative evidence, together with Slack, schedules, booking data, emails, paystubs, and other records in Defendants' possession.

**FIRST CAUSE OF ACTION**

**Fair Labor Standards Act - Unpaid Minimum Wages**
***(29 .S.C. §§ 206 and 216(b))***

106. Plaintiff repeats and realleges each preceding paragraph as if fully set forth herein.

107. At all relevant times, each Defendant was an employer, and Plaintiff was an employee, within the meaning of the FLSA.

108. Plaintiff was individually engaged in commerce and/or employed by an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.

109. The FLSA required Defendants to pay Plaintiff at least the federal minimum wage for every compensable hour worked by the regular payday.

110. Defendants failed to pay any wages for substantial portions of Plaintiff's work from July 17, 2024 through the commencement of W-2 payroll, failed to pay hourly wages for work performed between June 1 and July 2, 2025, failed to pay Plaintiff for March and April 2026, and failed to pay for mandatory meetings, post-shift work, and other compensable hours. In each affected workweek, the wages timely paid divided by compensable hours fell below the federal minimum wage.

111. The "intern" label did not eliminate the employment relationship. MBO was the primary beneficiary of Plaintiff's extended productive labor, and Defendants suffered or permitted the work and retained its immediate commercial benefit.

112. Defendants' violations were willful within the meaning of 29 U.S.C. § 255(a).

113. As a direct and proximate result, Plaintiff is entitled to unpaid federal minimum wages, an equal amount as liquidated damages, reasonable attorneys' fees and costs, and all other relief authorized by 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**

**Fair Labor Standards Act - Unpaid Overtime Compensation**
***(29 U.S.C. §§ 207 and 216(b))***

114. Plaintiff repeats and realleges each preceding paragraph as if fully set forth herein.

115. The FLSA required Defendants to compensate Plaintiff at not less than one and one-half times his regular rate for each hour worked over forty in a workweek.

116. Plaintiff was non-exempt. His actual duties did not satisfy the executive, administrative, professional, outside-sales, or any other exemption.

117. Plaintiff worked more than forty hours in one or more workweeks, including at least forty-four scheduled hours plus a mandatory meeting and post-shift work during the workweek of February 23 through March 1, 2026, and at least forty-four scheduled hours plus additional work during the workweek beginning March 16, 2026.

118. MBO's March 31, 2026 wage statement paid the 140 covered hours solely at the $17.00 straight-time rate and identified no overtime hours or premium, even though the pay period included the February 23 overtime workweek.

119. Defendants suffered or permitted Plaintiff to perform the overtime work, knew or should have known that he performed it, and failed to pay the required overtime compensation.

120. Defendants' overtime violations were willful within the meaning of 29 U.S.C. § 255(a).

121. As a direct and proximate result, Plaintiff is entitled to unpaid overtime compensation, an equal amount as liquidated damages, reasonable attorneys' fees and costs, and all other relief authorized by 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION

### New York Labor Law - Unpaid Regular, Minimum, and Final Wages
***(NYLL §§ 190 et seq., 191(3), 198, 650 et seq., 652, and 663)***

122. Plaintiff repeats and realleges each preceding paragraph as if fully set forth herein.

123. At all relevant times, each Defendant was an employer, and Plaintiff was an employee, within the meaning of the NYLL.

124. The NYLL required Defendants to pay Plaintiff for all hours worked at no less than the applicable New York minimum wage and to pay the agreed $17.00 Assistant Engineer rate and $21.00 Recording Engineer rate for earned work.

125. New York City's minimum wage was $16.00 per hour in 2024, $16.50 per hour in 2025, and $17.00 per hour in 2026.

126. Defendants failed to pay Plaintiff the required minimum wages during the period they labeled him an unpaid intern, and the limited flat-fee payments did not compensate all covered hours at the applicable statutory rate.

127. Defendants also failed to pay Plaintiff for work between June 1 and July 2, 2025; mandatory meetings; post-shift work; Recording Engineer sessions and rate differentials; 145 March 2026 Assistant Engineer hours; 96 April 2026 Assistant Engineer hours; and any other compensable time established through Defendants' records.

128. Defendants failed to pay Plaintiff's final wages no later than the regular payday for the pay period in which his employment ended, as NYLL § 191(3) required.

129. No law, court order, written authorization, or other lawful basis permitted Defendants to withhold the wages.

130. Defendants' failure to pay was willful and not based on a reasonable good-faith interpretation of the NYLL.

131. As a direct and proximate result, Plaintiff is entitled to the full amount of unpaid wages at the agreed or statutory rate, liquidated damages equal to one hundred percent of unpaid wages, prejudgment interest at nine percent per annum, reasonable attorneys' fees and costs, and all other relief authorized by NYLL §§ 198 and 663.

## FOURTH CAUSE OF ACTION

**New York Labor Law - Unpaid Overtime Compensation**
***(NYLL §§ 190 et seq. and 650 et seq.; 12 N.Y.C.R.R. § 142-2.2)***

132. Plaintiff repeats and realleges each preceding paragraph as if fully set forth herein.

133. The NYLL and 12 N.Y.C.R.R. § 142-2.2 required Defendants to compensate Plaintiff at one and one-half times his regular rate for each hour worked over forty in a workweek.

134. Plaintiff was non-exempt from New York's overtime requirements.

135. Plaintiff worked more than forty hours in one or more workweeks, including the workweeks of February 23 through March 1, 2026 and March 16 through March 22, 2026, after including all scheduled, meeting, and post-shift work.

136. Defendants failed to pay the required overtime compensation and furnished no statement identifying any overtime hours or overtime rate.

137. Defendants failed to maintain and produce accurate workweek-level records of Plaintiff's regular and overtime hours and may not benefit from those recordkeeping violations.

138. Defendants' NYLL overtime violations were willful and not based on a reasonable good-faith interpretation of the law.

139. As a direct and proximate result, Plaintiff is entitled to unpaid overtime compensation, liquidated damages equal to one hundred percent of the unpaid overtime, prejudgment interest at nine percent per annum, reasonable attorneys' fees and costs, and all other relief authorized by NYLL §§ 198 and 663.

## FIFTH CAUSE OF ACTION

**New York Labor Law - Spread-of-Hours Pay**
***(NYLL §§ 650 et seq. and 663; 12 N.Y.C.R.R. § 142-2.4)***

140. Plaintiff repeats and realleges each preceding paragraph as if fully set forth herein.

141. Under 12 N.Y.C.R.R. § 142-2.4, an employee must receive one additional hour of pay at the basic minimum hourly wage for each day on which the spread between the beginning and end of the workday exceeds ten hours.

142. Plaintiff regularly worked days with a spread of at least twelve hours during both the unpaid-intern and paid-employment periods, including 10:00 a.m. to 10:00 p.m. shifts, and at times remained beyond 10:00 p.m.

143. During unpaid workdays, Plaintiff received no compensation toward the combined minimum-wage and spread-of-hours requirement.

144. During paid employment, even assuming all scheduled hours were paid, Plaintiff's total daily compensation did not equal the minimum wage for all hours plus the additional one-hour amount. On a twelve-hour shift in 2025, the $0.50 hourly differential supplied only $6.00 toward the $16.50 additional amount; in 2026, his $17.00 rate equaled the New York City minimum wage and supplied no offset.

145. Defendants did not pay or identify any spread-of-hours premium.

146. Defendants' failure was willful and not based on reasonable good faith.

147. As a direct and proximate result, Plaintiff is entitled to unpaid spread-of-hours wages, liquidated damages equal to one hundred percent of the underpayment, prejudgment interest at nine percent per annum, reasonable attorneys' fees and costs, and all other relief authorized by NYLL § 663.

## SIXTH CAUSE OF ACTION

### New York Labor Law - Untimely and Improper Wage Frequency
***(NYLL §§ 190, 191, and 198)***

148. Plaintiff repeats and realleges each preceding paragraph as if fully set forth herein.

149. NYLL § 191 requires manual workers to be paid weekly absent a qualifying authorization and requires clerical and other workers to be paid no less frequently than semi-monthly on regular paydays designated in advance.

150. Plaintiff was a manual worker because at least approximately half of his studio duties were physical and, in all events, was at least a clerical and other worker. Under either classification, MBO's once-monthly payroll violated § 191.

151. Defendants compounded the unlawful monthly schedule by issuing many payments after the represented first-Monday payday and by withholding the final March and April wages entirely.

152. MBO was not a commission-sales employer paying Plaintiff commissions, and no statutory exception permitted monthly payment of Plaintiff's hourly wages.

153. Defendants did not pay Plaintiff on a regular payday no less frequently than semi-monthly. Accordingly, the limitation in NYLL § 198(1-a) applicable to certain manual-worker claims in which an employer paid no less frequently than semi-monthly does not shield Defendants from the remedies otherwise available for their monthly and later payroll.

154. Each delayed payment deprived Plaintiff of the timely use of earned wages and caused actual economic injury, including lost use and interest, inability to meet ordinary expenses with earned pay, repeated collection efforts, and continued work while Defendants carried an unlawful wage balance.

155. Defendants knew their payroll timing, selected and operated the monthly cycle, and continued the practice after Plaintiff complained.

156. As a direct and proximate result, Plaintiff is entitled to the remedies authorized by NYLL § 198, including the full amount of underpayments, lost interest and other damages for delayed wages, liquidated damages to the extent permitted, prejudgment interest, reasonable attorneys' fees and costs, and all other appropriate relief.

## SEVENTH CAUSE OF ACTION

### Wage Theft Prevention Act - Failure to Provide a Compliant Wage Notice
***(NYLL §§ 195(1) and 198(1-b))***

157. Plaintiff repeats and realleges each preceding paragraph as if fully set forth herein.

158. NYLL § 195(1) required Defendants to provide Plaintiff, at hiring, a written notice stating, among other things, each rate and basis of pay, the regular hourly and overtime rates, allowances, the lawful regular payday, the employer's legal and doing-business-as names, principal and mailing addresses, telephone number, and the required primary-language acknowledgement.

159. Defendants did not provide a notice satisfying those requirements within ten business days of Plaintiff's first day of paid employment.

160. The offer letter did not cure the violation because it omitted the overtime rate, a lawful regular payday, claimed allowances, complete doing-business-as information, required primary-language acknowledgement, and other mandatory information.

161. Plaintiff's primary language is Spanish, and Defendants did not provide a compliant wage notice in Spanish or English.

162. The deficient notice caused the concrete injuries alleged above: it obscured Plaintiff's lawful overtime rate and payday, made the $17.00/$21.00 arrangement harder to verify, delayed recognition and correction of the violations, and contributed to continued unpaid work and loss of the timely use of wages.

163. Plaintiff would have used accurate notice information to identify the violations, demand workweek-specific corrections, and avoid or mitigate additional underpayment and delay.

164. Pursuant to NYLL § 198(1-b), Plaintiff is entitled to statutory damages of $50.00 for each workday the violation occurred or continued, up to $5,000.00, together with costs, reasonable attorneys' fees, and other appropriate relief.

## EIGHTH CAUSE OF ACTION

### Wage Theft Prevention Act - Failure to Provide Accurate Wage Statements
### *(NYLL §§ 195(3) and 198(1-d))*

165. Plaintiff repeats and realleges each preceding paragraph as if fully set forth herein.

166. NYLL § 195(3) required Defendants to provide a statement with every wage payment accurately listing the dates covered, employee and employer information, all rates and bases of pay, gross wages, deductions, allowances, net wages, regular hours, overtime hours, and regular and overtime rates.

167. MBO's statements aggregated monthly hours and characterized compensation as regular pay at $17.00 or unexplained bonus payments. They omitted overtime hours and rates, the $21.00 rate, engineering hours, meetings, late-departure time, spread-of-hours pay, and other unpaid compensation.

168. The statements therefore were not statements "as required" by NYLL § 195(3).

169. The inaccurate statements caused the concrete injuries alleged above. They concealed workweek-level violations and the difference between work performed and wages paid, delayed Plaintiff's ability to quantify and challenge the underpayments, induced continued work while balances accumulated, and caused actual wage loss and loss of the timely use of money.

170. Accurate statements would have allowed Plaintiff to compare each workweek and rate to payroll, recognize the overtime and omitted work promptly, insist on correction, and avoid or mitigate additional harm.

171. Pursuant to NYLL § 198(1-d), Plaintiff is entitled to statutory damages of $250.00 for each workday the violation occurred or continued, up to $5,000.00, together with costs, reasonable attorneys' fees, and other appropriate relief.

## NINTH CAUSE OF ACTION

**Breach of Contract Against MBO Studio Inc.**
***(New York Common Law)***

172. Plaintiff repeats and realleges each preceding paragraph as if fully set forth herein.

173. MBO and Plaintiff entered an enforceable employment agreement under which MBO promised to pay Plaintiff $17.00 per hour for Assistant Engineer work. The signed offer letter and the parties' course of performance memorialize that agreement.

174. MBO, through Wollner, also agreed to pay Plaintiff $21.00 per hour for assigned Recording Engineer sessions. Plaintiff accepted the assignments and performed the work.

175. Plaintiff fully performed his obligations by providing Assistant Engineer and Recording Engineer services through April 18, 2026.

176. MBO breached the agreements by failing to pay the earned March and April Assistant Engineer wages, failing to pay or properly account for the January and February Recording Engineer compensation demanded under the agreement, and failing to pay other agreed hours established through the records.

177. As a direct and foreseeable result, Plaintiff suffered contract damages of at least $4,412.00 in presently itemized unpaid final wages, plus any additional agreed wages, prejudgment interest, and other relief permitted by law.

178. This claim is pleaded in the alternative and seeks no duplicative recovery for the same wage loss.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Pablo Andrés Muñoz Armella respectfully requests that the Court enter judgment in his favor and against Defendants, jointly and severally to the extent permitted by law, and award the following relief:

A. A declaration that Defendants violated the FLSA and NYLL by failing to pay Plaintiff for all

hours worked, failing to pay overtime and spread-of-hours compensation, paying wages at unlawful intervals, withholding final wages, and furnishing deficient wage documents;

B. Unpaid minimum wages under the FLSA for all compensable hours for which Defendants paid less than the federal minimum wage, including the unpaid-intern period, the pre-payroll transition period, the March and April 2026 workweeks, and other uncompensated time;

C. The full amount of unpaid regular, minimum, and final wages under the NYLL and contract, including at least $4,412.00 in presently itemized final Assistant Engineer and Recording Engineer wages, together with unpaid internship, meeting, post-shift, engineering, and other wages established through an accounting;

D. Unpaid compensation for mandatory weekly meetings, post-shift and late-departure work, and all other off-the-clock time, calculated from the best available evidence;

E. Unpaid overtime compensation for all hours worked over forty in each workweek, calculated using the lawful regular rate;

F. Unpaid spread-of-hours shortfalls for each qualifying day under 12 N.Y.C.R.R. § 142-2.4;

G. All damages authorized for violations of NYLL § 191, including the full underpayments, lost interest and other compensatory damages for delayed payment, liquidated damages to the extent permitted, and prejudgment interest;

H. Liquidated damages under the FLSA and/or NYLL, to the fullest extent permitted without duplicative recovery;

I. Statutory damages under NYLL §§ 195(1), 195(3), 198(1-b), and 198(1-d), supported by the concrete injuries alleged;

J. Breach-of-contract damages against MBO, including unpaid agreed wages;

K. Prejudgment interest at nine percent per annum on NYLL and contract damages under NYLL §§ 198 and 663 and CPLR §§ 5001 and 5004;

L. Post-judgment interest as provided by 28 U.S.C. § 1961 and other applicable law;

M. Reasonable attorneys' fees and costs under 29 U.S.C. § 216(b) and NYLL §§ 198 and 663;

N. An accounting and production of payroll, timekeeping, Slack, scheduling, meeting, studio-booking, session, access, QuickBooks, direct-deposit, email, text-message, internship, training, and other records needed to determine Plaintiff's hours, rates, pay dates, and damages;

O. The automatic fifteen-percent increase required by NYLL §§ 198(4) and 663(4) if any judgment remains unpaid for the statutory period; and

P. Such other legal and equitable relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

## DEMAND TO PRESERVE EVIDENCE

Defendants are directed to preserve all physical and electronically stored information relevant to Plaintiff, his internship and employment, duties, training, schedule, attendance, hours, rates, wages, payroll timing, complaints, resignation, and the claims and defenses in this action. This includes, without limitation: Slack workspaces and direct messages; emails, text messages, telephone logs, and voicemails; studio booking and client-session systems; calendars and meeting invitations; schedules, coverage records, and access logs; payroll, QuickBooks, paystub, direct-deposit, tax, and bank records; offer letters, wage notices, wage statements, policies, and personnel files; internship applications, agreements, curricula, school or academic communications, training materials, intern schedules, and records concerning the $1,650 payments; audio-project and digital-file metadata relevant to work performed; records concerning the $17.00 and $21.00 rates and the $100.00 and $816.00 "Bonus" payments; corporate governance and ownership documents bearing on employer status; and records concerning other Assistant Engineers, Recording Engineers, studio assistants, and interns subject to the same pay practices.

DATED: New York, New York
October 6, 2026

Respectfully submitted,

**SANDERS LAW GROUP**

By: _*/s/ Luis Munoz de la Vega*_________________
Luis Munoz de la Vega
333 Earl Ovington Boulevard, Suite 402
Uniondale, New York 11553
Tel: (516) 203-7600
Email: lvega@sanderslaw.group

**Attorneys for Plaintiff Pablo Andres Munoz Armella**